UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARTIN PAUL LILLIS,

     Plaintiff,

       v.                                  No. 3:16-cv-269(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

     Defendant.
_____X

**RULING ON PENDING MOTIONS**

     Plaintiff Martin Paul Lillis has filed this appeal of the adverse decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 18]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 21]. The undersigned heard oral argument on February 23, 2017. After a careful review of the administrative record, and thorough consideration of the issues Plaintiff raises, the Commissioner's decision is affirmed.

**Legal Standard**

     The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

1

**Background**

Plaintiff filed his DIB and SSI applications on September 2, 2009, alleging a disability onset date of May 26, 2006.  His claims were denied at both the initial and reconsideration levels.  Thereafter, Plaintiff requested a hearing.  On September 12, 2011 and January 24, 2012, hearings were held before administrative law judge Robert A. DiBiccaro (the "ALJ").  On March 15, 2012, the ALJ issued a decision denying Plaintiff's claims.  The matter proceeded to the United States District Court for the District of Connecticut, and on June 24, 2014, United States Magistrate Judge Holly B. Fitzsimmons issued a Recommended Ruling remanding the matter for rehearing.  *See* 3:13-cv-508(HBF)(WWE), ECF # 20.  The Recommended Ruling was adopted on July 9, 2014, and the matter was remanded for additional administrative proceedings so that the ALJ could evaluate Plaintiff's subjective complaints of pain and reassess Plaintiff's credibility.  *See* 3:13-cv-508(HBF)(WWE), ECF # 21; (R. 483).  Upon remand, the ALJ held additional hearings on May 18, 2015 and August 10, 2015.  On October 21, 2015, the ALJ issued a partially favorable decision finding Plaintiff disabled as of October 9, 2015, but not before. Plaintiff now appeals that decision to the extent the ALJ did not find him disabled prior to October 9, 2015.

Plaintiff was forty years old on the alleged onset date.  He completed through the eleventh grade in school; he did not earn a high school diploma or its equivalent.  (R. 513). Plaintiff has past work experience as a food selector, forklift operator, and mover.  (R. 516, 520). Plaintiff last worked in 2006.  (R. 486, 515).  After an injury at work, he received a lump sum worker's compensation award in 2006.  (R. 515).  Plaintiff also received some unemployment benefits in 2009, 2010, and 2011.  (R. 245).

At oral argument the parties stipulated to Plaintiff's medical background as presented in the briefs accompanying both parties' motions. The Court adopts these facts and incorporates them by reference herein.

## The ALJ's Decision

The ALJ followed the sequential evaluation process for assessing disability claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 486). At step two, the ALJ found the following severe impairments: right shoulder osteoarthritis with supraspinatous tendon tear, status post-surgical repair and re-tear; left shoulder full thickness tear and osteoarthritis, status post-surgical repair; degenerative disc disease of the cervical and lumbar spine; bilateral osteoarthritis of the hips; obesity; depressive disorder; anxiety disorder; and substance abuse in remission. (*Id.*). At step three, the ALJ found that since the alleged onset date Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 487-88). Next, the ALJ determined Plaintiff retained the following residual functional capacity[1] since the alleged onset date:

> Plaintiff can perform sedentary work. He is limited to occasional reaching with his arms extended, no reaching overhead, frequent reaching close to his body, and occasional pushing and pulling of the upper and lower extremities. He requires the ability to change positions every 30 to 60 minutes. He can rotate his head only 45 degrees to the right or left, with no limitations of its up or down movement. He can occasionally climb, balance, stoop, crouch, crawl, and kneel. He is limited to work that requires less than 30 days to learn, and that involves only routine and repetitive tasks. Work should involve few decision and should not involve production pace, such as piecework or assembly line.

---

[1] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(R. 488-94).  At step four, the ALJ found Plaintiff was unable to perform any past relevant work.

(R. 494).  Finally, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to

conclude that, prior to October 9, 2015, there were jobs in significant numbers in the national

economy Plaintiff could perform.  (R. 494).  Specifically, the VE testified that a person with the

assessed RFC could perform the positions of document preparer, addressing clerk, and dowel

inspector.  (R. 495).  The ALJ also found that, beginning on October 9, 2015, Plaintiff's age

category changed, and a finding of disabled was reached by application of the Medical-

Vocational Rules.  (R. 496).  Accordingly, the ALJ found Plaintiff disabled as of October 9,

2015, but not before.

**Discussion**

       Plaintiff raises several issues on appeal, which the Court will discuss in turn.

**1. Combination of Impairments Analysis**

       Plaintiff first argues that the ALJ failed to consider the impact of his obesity on his

lumbar spine or hips, and therefore did not consider the cumulative effect of his impairments.  A

review of the ALJ's decision, however, belies this claim.

       Obesity is not an independent listed impairment, but it must be considered along with a

claimant's other impairments.  *See Crossman v. Astrue*, 783 F. Supp. 2d 300, 309-10 (D. Conn.

2010).  In this case, the ALJ properly evaluated Plaintiff's impairments in combination.  The

ALJ noted not only "the potential effects obesity has in causing or contributing to impairments in

the musculoskeletal…system," but also that "the combined effects of obesity with other

impairments can be greater than the effects of each of the impairments considered separately."

(R. 487).  He also discussed the medical evidence in detail, much of which takes into account

Plaintiff's obesity.  When an ALJ relies on medical reports that note a claimant's obesity, courts

4

will find that the ALJ properly considered it.  *See Drake v. Astrue*, 443 F. App'x 653, 657 (2d

Cir. 2011) ("[W]e agree with the District Court that the ALJ implicitly factored [claimant's]

obesity into his RFC determination by relying on medical reports that repeatedly noted

[claimant's] obesity and provided an overall assessment of her work-related limitations.").

     Further, Plaintiff does not point to any evidence suggesting that his obesity caused a

specific functional limitation.  *See Francis v. Astrue*, No. 309-CV-1826 VLB TPS, 2010 WL

3432839, at *4 (D. Conn. Aug. 30, 2010), *report and recommendation adopted,* No. 3:09-CV-

01826 VLB, 2011 WL 344087 (D. Conn. Feb. 1, 2011) (upholding an ALJ's analysis of the

combined effect of impairments when the claimant did not show how obesity specifically

impacted his ability to work and the ALJ found that claimant's impairments, in combination, did

not satisfy a listed impairment).  Since Plaintiff cannot identify any specific functional limitation

related to obesity, and because the ALJ specifically addressed obesity grouped with the other

conditions, the ALJ properly considered the combined effect of Plaintiff's impairments.

### 2.  The Record Evidence

     Plaintiff next argues that the ALJ erred by not obtaining a medical source statement from

a treating physician.  Specifically, Plaintiff avers that the ALJ should have obtained such a

statement from his primary care physician, Dr. Pellenberg, and from his orthopedic, Dr. Reznik.

The Commissioner counters that, since there were no clear gaps in the administrative record, the

ALJ was not required to obtain any additional information.  The Court agrees with the

Commissioner.

     When an administrative record is devoid of "obvious gaps" and the ALJ has before him a

"complete medical history," the ALJ is not required to develop the record further.  *See Rosa v.

Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  When the medical record is comprehensive, lack of a

medical source statement will not necessarily make the record incomplete.  *See McRae v. Colvin*, No. 3:14-CV-1868(WIG), 2016 WL 1323713, at *2 (D. Conn. Feb. 3, 2016), *report and recommendation adopted sub nom. McCrae v. Colvin*, No. 3:14-CV-01868 (VAB), 2016 WL 1311998 (D. Conn. Apr. 4, 2016).

In this case, the ALJ had treatment notes from a ten year period and the opinions of two consultative examiners.  The ALJ was also told, by Plaintiff's counsel, that Dr. Pellenberg refused to provide a medical source statement after being asked to do so (R. 31), and that it would be useless to try to subpoena Plaintiff's treating orthopedic.  (R. 510-11).  In this case, the ALJ did not err by not obtaining a medical source statement from a treating physician.  *See Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (when there was sufficient evidence before the ALJ, the ALJ was not obligated to augment the record by obtaining a medical source statement from one of claimant's treating physicians).  The complete record, combined with the representations of futility in seeking additional information, direct that the ALJ was not required to seek a medical source statement.

### 3.  The Credibility Determination

Next, Plaintiff claims that the ALJ's credibility determination is deficient.  Specifically, he argues that the ALJ characterized his reported activities as more intensive than they actually were, that the level of activity alleged is not necessarily inconsistent with his allegations of pain, and that Plaintiff's gap in treatment from 2007-2010 does not undercut a claim of disabling pain. The Commissioner maintains that the credibility determination is proper, and that the Court should not second-guess the ALJ's record-based rationale.  The credibility determination is supported by substantial evidence.

In evaluating a claimant's credibility, the ALJ is required to take into account the claimant's reports of pain and other limitations. 20 C.F.R. §§ 404.1529, 416.929. The ALJ is not, however, required to accept the claimant's subjective complaints without question. *Taylor v. Astrue,* No. 3:09-CV-1049 WIG, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The regulations set forth a two-step process for this evaluation. First, the ALJ determines whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). Next, the ALJ determines "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.* "As a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence." *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks omitted).

Here, the ALJ relied on appropriate considerations when assessing Plaintiff's credibility. He followed the two-step process outlined above, and also considered factors such as Plaintiff's activities of daily living, the gap in medical treatment, the receipt of unemployment benefits during the period of alleged disability, and Plaintiff's history of substance abuse.

An ALJ can consider a claimant's daily activities when evaluating credibility. *See Durante v. Colvin*, No. 3:13-CV-1298 HBF, 2014 WL 4852881, at *20 (D. Conn. Aug. 7, 2014), *report and recommendation adopted,* No. 3:13-CV-1298 JCH, 2014 WL 4843684 (D. Conn. Sept. 29, 2014); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (observing that claimant's various daily activities were proper factors in considering the credibility of claimant's

7

testimony as to the extent of his limitations).  It is likewise well-established that a gap in medical treatment is a proper credibility consideration.  *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (a claimant's failure to seek medical treatment during a three-year period "seriously undermin[ed]" his claimed continuous disability).  Further, an ALJ can consider receipt of unemployment benefits and substance abuse history as factors affecting credibility.  *See Perez v. Colvin*, No. 3:13-CV-868 HBF, 2014 WL 4852836, at *25 (D. Conn. Apr. 17, 2014), *report and recommendation adopted,* No. 3:13-CV-868 JCH, 2014 WL 4852848 (D. Conn. Sept. 29, 2014) ("The ALJ's notation of unemployment benefits is an appropriate factor for the ALJ to consider in evaluating a claimant's credibility.");  *Arrington v. Astrue*, No. 09-CV-870 A F, 2011 WL 3844172, at *13 (W.D.N.Y. Aug. 8, 2011), *report and recommendation adopted,* No. 09-CV-870, 2011 WL 3844164 (W.D.N.Y. Aug. 30, 2011) (an ALJ can consider substance abuse in assessing credibility as one factor among "additional factors necessary to a proper credibility assessment.").

Here, the ALJ's credibility determination is supported by substantial evidence.  "Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence…Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record."  *Hanson v. Comm'r of Soc. Sec.*, No. 315CV0150GTSWBC, 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, No. 315CV150GTSWBC, 2016 WL 3951150 (N.D.N.Y. July 20, 2016).  Plaintiff cannot meet that burden here.

### 4.  The ALJ's Vocational Findings

Lastly, Plaintiff challenges the methods the VE used to calculate the number of jobs existing in the national that Plaintiff could perform.  Plaintiff also challenges one of the jobs

8

identified as a position he could perform.  And, Plaintiff claims that total number of jobs identified by the VE is insufficient.  In all, Plaintiff's arguments – though they have significant merit – cannot be sustained here.  The Court finds that the Commissioner has met her burden at step five.

At the fifth step, the Commissioner must show the existence of work in the national economy that a claimant can perform.  20 C.F.R. §§ 404.1512(b)(3); 416.912(b)(3).  To satisfy this burden, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and [the hypotheticals] accurately reflect the limitations and capabilities of the claimant involved."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal quotation marks and citations omitted).

The Court notes that Plaintiff's concerns as to the validity of vocational experts' methodologies in general are entirely understandable.  In this instance, however, the concerns do not require remand.  In making his argument, Plaintiff relies on case law from the Seventh Circuit which rejects the very method that the VE used here to determine the number of jobs available in the national economy.  As Judge Posner explains in *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015):

> We have recently expressed concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings…, as have other courts…, and commentators.  The problem appears to be that the only reliable statistics are census data for broad categories of jobs, rather than for jobs in the narrower categories that the applicant for benefits is capable of doing.  Typically, it appears, the vocational expert simply divides the number of jobs in the broad category that includes the narrow category of jobs that the applicant can perform by the number of narrow *categories* in the broad category, thus assuming that each narrow category has the same number of jobs as each other narrow category—which is preposterous.  A vocational expert's stated number of jobs in a narrow category seems likely, therefore, to be a fabrication.

9

*Id.* at 507-08 (citations omitted).

Here, the VE testified that, in part, he uses the division method described and rejected in *Alaura*. (R. 564). The VE also testified that, after he calculates that number, he consults other sources standard in the industry such as Job Browser Pro and U.S. long-term employment outlook numbers, for comparison. (*Id.*). The VE also testified as to his familiarity, generally, with national job incidents data. (R. 563-64). While the result may be different were we in the Seventh Circuit, the VE's estimates are apparently good enough in this jurisdiction. In the Second Circuit, "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." *McIntyre*, 758 F.3d at 152. When a VE's testimony is based on "the expert's professional experience and clinical judgment, and [is] not undermined by any evidence in the record," an ALJ may credit it. *Id.*

Again, this is not to say that Plaintiff does not have a fair point. In fact, it would be helpful if the Second Circuit would weigh in on this precise issue and engage thoroughly the reasoning in Judge Posner's opinion in *Alaura*. As the law stands now, though, this Circuit does not require the level of scrutiny of a VE's methods Plaintiff seeks. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 449-50 (2d Cir. 2012)(employing a substantial evidence standard for evaluating a VE's testimony rather than a more stringent *Daubert* rule); *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008) (explaining that when a VE identifies the sources he generally consulted to determine the number of jobs available, he is not required to "identify with greater specificity the source of his figures or to provide supporting documentation."); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012) (finding that when a VE "utilized reliable statistical sources as well as personal knowledge and experience to develop the

occupational projections provided," a "step-by-step description of the methodology used" was not required); *Henry v. Colvin*, No. 12-CV-6822 (KBF), 2015 WL 9238959, at *7 (S.D.N.Y. Dec. 17, 2015) (expressing concern about reliance on the Dictionary of Occupational Titles since it was published over twenty-five years ago, and about actual availability of some of the jobs the VE proposed, but noting that "the Dictionary is nevertheless an accepted basis for vocational opinion according to the Commissioner's rules."); *Healy v. Colvin*, No. 3:15-CV-01579 (JAM), 2016 WL 4581403, at *7 (D. Conn. Sept. 2, 2016) (finding that when claimant could not show the VE's estimates were factually incorrect, "[t]he failure of the vocational error to cite a source for his estimate does not constitute error."). Accordingly, the ALJ did not err in relying on the VE's estimates.

That the VE here did not have specific expertise in the Connecticut job market is not of consequence. To meet her burden at step five, "the Commissioner need show only one job existing in the *national economy* that [claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (emphasis added). And, the number of positions available is sufficient. Again, even removing the challenged document preparer position, the VE still identified 16,770 positions in the national economy. *See Hanson*, 2016 WL 3960486, at *13 (explaining that a significant number of jobs has been identified as being is fairly minimal).

In all, the Commissioner has met her burden at step five.

## Conclusion

After a thorough review of the administrative record and consideration of the arguments raised by Plaintiff, Plaintiff's motion to reverse [Doc. # 18] is DENIED and the Commissioner's motion to affirm [Doc. # 21] is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  1st  day of March, 2017, at Bridgeport, Connecticut.

*/s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge